IN THE SUPREME COURT OF NORTH CAROLINA

No. 198A22-2

Filed 22 May 2026

GARY A. SURGEON and MARLA LEPLEY-STARR, individually and on behalf of those similarly situated

v.

TKO SHELBY, LLC, trading as NISSAN OF SHELBY, INTEGRITY AUTOMOTIVE PROMOTIONS, LLC, A TO Z STAFFED EVENTS, INC., BRIAN LEACHMAN, MICHAEL SMITH, and TRAVIS K. OSTROM d/b/a THE TKO GROUP, defendants; DEALER COMPLIANCE SERVICES, INC., cross-claim defendant

Appeal pursuant to N.C.G.S. § 7A-27(a)(4) from an order granting plaintiff's motion for class certification entered on 15 November 2024 by Judge Forrest Donald Bridges in Superior Court, Gaston County. Heard in the Supreme Court on 29 October 2025.

*Higgins Benjamin, PLLC, by John F. Bloss, Frederick L. Berry, and Robert N. Hunter Jr., for plaintiff-appellees.*

*Gray, Layton, Kersh, Solomon, Furr & Smith, P.A., by Michael L. Carpenter and Stratton L. Stone; Lewis Brisbois, by Jeremy A. Stephenson; Barnes, Alford, Stork & Johnson, LLP, by Curtis W. Dowling and Matthew G. Gerrald, for defendant-appellants.*

DIETZ, Justice.

This class action case returns to us after we vacated the trial court's certification order and remanded the case to resolve conflicting legal analysis. In this second appeal we are struck with déjà vu. The trial court's latest order, like the first, contains a conflict between the definition of the class and the court's analysis

concerning a named plaintiff.

In the first appeal, defendants argued that there were deeper ascertainability problems that precluded class certification. We declined to reach those issues because we believed they might become moot after the trial court clarified the class definition. That did not happen. In this second appeal, these same ascertainability issues persist, and we can no longer ignore them.

Specifically, the putative class cannot be ascertained without individualized fact assessments that would predominate over issues common to all class members. To identify the class members, the trial court must determine which of 2,118 people who called a car dealer's promotional hotline number are among the 927 people who later visited the dealership to claim a promotional prize. Because there are no records of who visited the dealership, this fact question cannot be resolved without individualized determinations for each of those 2,118 people.

Plaintiffs contend that the dealership should not be "rewarded" for failing to keep records of who visited it. But plaintiffs do not identify any legal reason why the dealership was obligated to retain those records (assuming they once existed), and there is no indication in the record that plaintiffs pursued spoliation or destruction-of-evidence claims in the trial court. Our ruling today does not address these discovery-related claims and does not preclude plaintiffs from pursuing them on remand. We hold only that, on the current record, plaintiffs cannot satisfy the legal criteria for class certification, and we must therefore vacate the trial court's class

certification order.

## Facts and Procedural History

In 2018, plaintiffs received a promotional flyer in the mail advertising a "Game On Tent Sale Event" at Nissan of Shelby, an automobile dealership. The promotion offered a chance to win one of six "grand prizes," including a 2018 Nissan Sentra SR or $20,000 in cash. The flyer contained a scratch-off section with instructions stating that "if the scratch off below matches one of the six lucky number game prize boxes, you are a guaranteed winner of one of these prizes." The flyer instructed recipients whose code matched a winning prize to call the event hotline and then come to the dealership during the sales event to claim their prize.

Plaintiffs allege that the scratch-off portion of *all* the flyers matched the number for the car or $20,000 grand prize, misleading recipients into believing they won the grand prize. Instead—according to defendants' interpretation of the contest rules—a separate "activation code" printed on each flyer governed the prize associated with that flyer. For all known contestants who attempted to claim a prize, the activation code awarded a $2 cash prize.

Plaintiffs brought claims for breach of contract and unfair and deceptive trade practices against the dealership and various other parties connected to the sales promotion. During discovery, defendants produced records showing that approximately 50,000 households received the promotional flyer and 2,118 people called the promotional hotline number to claim their prize as the flyer instructed.

Defendants also produced records indicating that 927 people visited the dealership during the promotional period. There is conflicting evidence about whether, during the promotional period, the dealership had more detailed records of those 927 people. But it is undisputed that those records, if they once existed, no longer exist. As a result, there is no documentary evidence of who visited the dealership to claim a prize.

In 2021, the trial court granted plaintiffs' motion to certify a class consisting of the 927 people who visited the dealership. *Surgeon v. TKO Shelby, LLC*, No. 18 CVS 3983, 2021 WL 9772618, at \*5 (N.C. Super. Ct. Dec. 13, 2021). Defendants appealed that certification order to this Court under N.C.G.S. § 7A-27(a)(4). We vacated the order because of a "mismatch" between the trial court's class definition and the analysis used to certify the class. *Surgeon v. TKO Shelby, LLC*, 385 N.C. 772, 778, 782 (2024). We remanded for the trial court to address the conflicting analysis and, if appropriate, enter a new certification order with consistent legal reasoning. *Id.* at 782.

On remand, the trial court again certified a class. Defendants again appealed to this Court under N.C.G.S. § 7A-27(a)(4).

**Analysis**

**I.     Class certification criteria**

This Court has reaffirmed the appropriate standard for class certification in a number of recent decisions. *See, e.g.*, *Armistead v. Cnty. of Carteret*, 926 S.E.2d 886

(N.C. 2026); *Wardson Constr., Inc. v. City of Raleigh*, 926 S.E.2d 903 (N.C. 2026). "As a threshold matter, the party seeking class certification bears the burden to show that a proper class exists, meaning the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Jackson v. Home Depot U.S.A., Inc.*, 388 N.C. 109, 113 (2025) (cleaned up). "Beyond this threshold requirement, the party seeking class certification also must satisfy a number of other certification criteria designed to protect the interests of the absent class members, such as notice and adequacy of representation." *Armistead*, 926 S.E.2d at 889 (cleaned up). These legal criteria for class certification are questions of law that we review de novo. *Wardson*, 926 S.E.2d at 908.

"Once these legal prerequisites are met, the trial court may, in its discretion, certify a class." *Armistead*, 926 S.E.2d at 890. "In evaluating whether class certification is appropriate, the trial court should consider whether a class action is superior to other available methods to adjudicate the controversy and whether the class action is likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results." *Id.* "The court also considers whether the class mechanism is efficient and economically reasonable given the administrative costs and the likely recovery for individual claimants." *Id.* (cleaned up).

On appeal, "the trial court's legal analysis of the class certification criteria is reviewed de novo, the court's corresponding fact findings are reviewed for competent

evidence, and the court's ultimate determination to certify a class as the superior method of adjudicating the claims is reviewed solely for abuse of discretion." *Wardson*, 926 S.E.2d at 908.

## II.    Conflicting class analysis

When this case first came to us on appeal, we vacated and remanded because of a "mismatch between the class the trial court analyzed and the one it ultimately certified." *Surgeon*, 385 N.C. at 778. Specifically, when analyzing the class criteria, the trial court described the class as people who received the promotional flyer, called the hotline number on the flyer, and went to the dealership to claim a prize. But when later defining the class, the court stated that the class members were those who received the flyer and went to the dealership. This second definition did not require class members to have also called the hotline number.

These "mismatched" definitions created tension within the court's analysis. Even among the two named plaintiffs, we noted that the record suggested one called the hotline number, but the other did not. *Id.* at 781. We therefore vacated the trial court's certification order and remanded the case because the decision to certify the class "cannot be squared with the reasoning used to reach that decision." *Id.* at 778.

On remand, the trial court resolved the mismatched definitions by concluding that class members must satisfy three requirements: (1) received the promotional flyer; (2) called the hotline number shown on the flyer; and (3) then visited the dealership to claim their prize.

But in the trial court's fact findings, the court also found that one of the named plaintiffs did not call the hotline number. Instead, the plaintiff's grandmother called the number. Nevertheless, the court permitted her to remain a named plaintiff representing the class.

Once again, this creates an irreconcilable tension in the court's analysis that prevents meaningful appellate review of the court's order. *See id.* Did the court determine that *someone* must call the hotline number, but it need not be the class members themselves? Did the court believe the named plaintiff's grandmother was acting as her agent in claiming the prize? Or did the court, as in the first order, use two different class definitions and analyses in two different parts of the order?

We do not know. Accordingly, we must again vacate the trial court's class certification order because the conflicting analyses preclude meaningful appellate review. *See id.*

## III. Ascertainability analysis

In the first appeal in this case, we acknowledged that defendants focused primarily on more fundamental problems with the class certification order—most notably a series of ascertainability concerns—but we held that "we need not address all of defendants' arguments in this appeal, many of which may be mooted by entry of a new order on remand." *Id.* at 779. We examined only the issues "intertwined with the mismatched class definitions." *Id.*

In this second appeal, defendants insist that it is time to examine these deeper

issues with the legal criteria for class certification. We agree that it will not serve the interests of justice to ignore these issues a second time. Shortly before oral argument in this case, plaintiffs voluntarily dismissed the claims of the named plaintiff who did not call the hotline number. Defendants have raised legitimate concerns about the propriety of that voluntary dismissal because several issues involving that plaintiff are the subject of this appeal. Regardless of whether that dismissal is effective, it cannot cure the conflict in the trial court's reasoning. But if we remand solely to correct the conflicting class analyses involving that named plaintiff, as we did in the last appeal, there will likely be yet another interlocutory appeal on class certification, raising the remaining unaddressed arguments, which would further delay the resolution of this case. To avoid that outcome, we will examine defendants' other challenges to class certification.

Defendants' central argument is that the class is not ascertainable because there is no way to know "who exactly is a member of the class" without individualized fact determinations that will predominate over the common issues.

Ascertainability is one of the "legal criteria" for class certification. *Armistead*, 926 S.E.2d at 890. "To ensure that class members receive the required notice, the trial court must confirm that there is a feasible, objective way to identify who those class members are." *Id.* "Importantly, ascertaining the members of the class cannot be done in a manner that defeats other legal criteria for class certification," such as the predominance requirement. *Id.* Thus, "if class members cannot be identified

without separate evidence for each class member and then separate resolution by a factfinder, the ascertainability requirement would not be satisfied because the identification process would devolve into a series of mini-trials that would dwarf the adjudication of the common issues." *Id.* (cleaned up).

Here, whatever the ultimate class definition in this case, the parties acknowledge that it must be limited to people who went to the dealership to claim a prize listed on the promotional flyer. Undisputed records from defendants indicate that 927 people came to the dealership during the promotional period. But these records do not identify who those 927 people are. Other records contain the telephone numbers of 2,118 people who called the hotline number listed on the promotional flyer. But we do not know how many of those 2,118 people are among the 927 people who later went to the dealership.

As a result, there is no "feasible, objective way" to identify the 927 people who went to the dealership to claim a prize. *See id.* The only option would be to contact the 2,118 people who called the hotline and ask them to "self-identify" as class members by asserting that they are among the 927 people who later visited the dealership. *Id.* at 890–91. As we explained in *Armistead*, "this self-identification process would cause the case to devolve into individualized mini trials, including the need for discovery, to determine if the claimant in fact did or did not" go to the dealership. *Id.* at 891 (cleaned up). This, in turn, would create a predominance problem that precludes class certification. Accordingly, on the current record, the

proposed class is not ascertainable, and we must vacate the trial court's certification order.

We close by noting that, in their briefing to this Court, plaintiffs state that defendants "should not be rewarded for their failure to maintain these business records." This issue is beyond the scope of our review of this class certification order. Notably, plaintiffs do not argue that defendants *wrongfully* discarded these records, nor do they point to any legal basis for defendants to retain them. Moreover, during the two years of intensive discovery in this case, plaintiffs did not assert spoliation or destruction-of-evidence claims. Likewise, plaintiffs did not raise these issues during the trial court's multiple class certification hearings, instead arguing that there was no need to ascertain the identities of class members until after final judgment, when money would need to be disbursed.

We do not have the full trial record before us and do not know if there was a discovery order or deadlines for motions practice that have since passed. We leave this issue, should plaintiffs seek to pursue it, in the hands of the trial court. We note only that our holding today does not preclude the trial court from examining this question, if appropriate, and imposing a sanction should plaintiffs show that defendants wrongfully destroyed records necessary to ascertain the members of this putative class.

## Conclusion

We vacate the trial court's class certification order and remand for further

proceedings.

VACATED AND REMANDED.